Filing # 66540638 E-Filed 01/15/2018 03:56:28 PM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

## IN AND FOR SEMINOLE COUNTY, FLORIDA

Edwin P. Christensen Jr.

    Plaintiff,

v.                                           CASE NO.: 2018-CA-000154-11B-L

Wilmington Savings Fund Society, FSB, d/b/a
Christiana Trust, not individually but as trustee
for Pretium Mortgage Acquisition Trust; *et al.,*

    Defendant (s),

_____/

## COMPLAINT

    The Plaintiff, Edwin P. Christensen Jr. a/k/a Edwin Christensen Jr. a/k/a Edwin Christensen (herein also referred to as "Debtor"), by and through the undersigned counsel, hereby files this Complaint against the said Defendants, its affiliates, and agents. (Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust - Bank of America, N.A. - ) – (herein also referred to as "Creditor")

**Background & Factual allegations**

*** E-FILED: GRANT MALOY, CLERK OF CIRCUIT COURT SEMINOLE COUNTY, FL  ****

Background & Factual allegations commence with the following with any complaint exhibits.

1.     The action relates to collection of debt secured by real property (herein after referred to as the "PROPERTY") known as:   1367 Marcy Drive North, Longwood, FL 32750

2.     Pertinent events, in part, transpired during a related Florida Court County and Case:   Seminole County 2012-CA-001239

3.     Pertinent note, allonge, mortgage, assignments, letters, and other documents are referenced from the filings in the Court Record of the aforementioned case.

4.     Plaintiff is over the age of 18 years; resides and/or works in this instant county.

5.     Defendants are entities conducting business in this county, throughout the state of Florida and the United States.

6.     This complaint seeks relief damages in an amount over $15,000.00 dollars, exclusive of interest, costs, and attorneys' fees.

7.     Venue is proper pursuant to Florida Statutes, *inter alia* § 47.011.

-------------------

8.     The section below creates a duty on the part of mortgage servicers, principals (investors), and their agents to follow HAMP guidelines.

*9.*     Pursuant to Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), §201, the HAMP guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry:

STANDARD INDUSTRY PRACTICE.—The qualified loss mitigation plan guidelines [i.e., HAMP] issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purposes of all Federal and State laws.

*10.*     HAMP directives were further addressed and incorporated into to the Dodd-Frank Wall Street Reform and Consumer Protection Act, herein "Dodd-Frank Act". The Dodd-Frank act further empowered the Consumer Financial Protection Bureau (herein "CFPB") to regulate pertinent activities.

*11.*     From 2017, the Consumer Financial Protection Bureau continues to regulate SERVICING and STANDARD INDUSTRY PRACTICE continues.

*12.*     The CFPB has authority on 12 CFR Part 1024 (Regulation X). Particularly applicable in this matter is § 1024.41 Loss mitigation procedures. These regulations impart the following duties which the Creditor failed.

*13.*     Creditor failed to send written notification within 5 business days stating that the package is complete or incomplete.

*14.*     Creditor also did not provide payoff statement with 7 days.

*15.*     Creditor failed to notify Debtor of the outcome of the submission within 30 days.

*16.*     Creditor failed to timely give a complete list of documents still needed.

-------------------

BACKGROUND

*17.*     The pertinent times follow.

*18.*      Modifications were done in 2016 and 2017

*19.*     Above Paragraphs shall be referred to as "Background & Factual allegations".

## COUNT I – NEGLIGENCE

*20.*     Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*21.*     At all material times, each DEFENDANT owed a duty to exercise reasonable care in the processing of mitigation plans/options.

*22.*     Pursuant to, inter alia, aforementioned guidelines, a homeowner may not be foreclosed on while being evaluated for a loan modification.

*23.*    Moreover a foreclosure must be cancelled if a homeowner has applied for a mitigation/modification.

*24.*    At all material times, each DEFENDANT owed a duty to exercise reasonable care in the processing of mitigation plans/options.

*25.*    Each DEFENDANT (investor, servicer, principal, OR agent thereof) breached the duty of care by DEVIATING from aforementioned STANDARD INDUSTRY PRACTICE.

*26.*    CREDITOR breached the duty of care by DELAYING aforementioned mitigation plan.

*27.*    CREDITOR breached the duty of care by frustrating aforementioned mitigation plan/option by misrepresenting the status of the mitigation process.  For example, misrepresenting whether documents were received by the DEFENDANT.

*28.*    DEBTOR would have (or had) made payments pursuant to (temporary) modification agreement.

*29.*    CREDITOR breached the duty of care in modification agreement was not continued.

*30.*    CREDITOR may have further breached the duty of care with other acts to be determined through discovery.

*31.*    As a direct, foreseeable, and proximate result of each DEFENDANT's negligence, Plaintiff has suffered damages.

*32.*    The last element of damage occurs with the issuance of CERTIFICATE OF TITLE.

*33.*    As a further direct and proximate result of each CREDITOR's negligence, Plaintiff has incurred damages and will continue to incur additional damages in the future.  Damages, include but not limited to: damages emanating litigation and mitigation processing, damages emanating from continued diminished credit scores, and damages emanating from time lost.

*34.*    WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested infra.

## COUNT II – NEGLIGENT TRAINING

*35.*    Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*36.*    CREDITOR has a duty of care to train a SERVICER/AGENT.

*37.*    For each act of negligence in COUNT I committed by a SERVICER or AGENT, there is a breach of the duty of the PRINCIPAL to reasonably train such SERVICER or AGENT.

38.   As a direct, foreseeable, and proximate result of the negligent training of a SERVICER or AGENT, Plaintiff has suffered damages.

39.   The last element of damage occurs with the CERTIFICATE OF TITLE.

40.   As a further direct and proximate result of the negligent training of a SERVICER or AGENT, Plaintiff has incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.

41.   WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested infra.

### COUNT III – NEGLIGENT SUPERVISION

42.   Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

43.   CREDITOR has a duty of care to supervise the acts of a SERVICER/AGENT.

44.   For each act of negligence in COUNT I committed by a SERVICER or AGENT, there is a breach of the duty of the PRINCIPAL to reasonably supervise such SERVICER or AGENT.

45.   As a direct, foreseeable, and proximate result of the negligent supervision of a SERVICER or AGENT, Plaintiff has suffered damages.

46.   The last element of damage occurred with the CERTIFICATE OF TITLE.

47. As a further direct and proximate result of the negligent supervision of a SERVICER or AGENT, Plaintiff has incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra.*

## COUNT IV NEGLIGENT MISREPRESENTATION

48. Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

49. In order to allege a viable cause of action for negligent misrepresentation a plaintiff must allege in his complaint that: the CREDITOR made a misrepresentation of material fact that he believed to be true but which was in fact false; the CREDITOR was negligent in making the statement because he should have known the representation was false; the CREDITOR intended to induce the plaintiff to rely and [act] on the misrepresentation; and injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. See *Simon v. Celebration Co.*, 883 So.2d 826, 832 (Fla. 5th DCA 2004).

50. Defendant CREDITOR made the following misrepresentations.

*51.*    To enter documents into evidence, CREDITOR necessarily indicated the records to be trustworthy.

*52.*    However, CREDITOR should have known as misrepresentations.

*53.*    UPON DISCOVERY of misrepresentation/impropriety in multiple matters, CREDITOR should be deem to have knowledge of misrepresentation/impropriety.

*54.*    CREDITOR could have made correction / corrective document.

*55.*    CREDITOR failed to present a correction / corrective document or failed to present verification of trustworthiness.

*56.*    Instead, CREDITOR proceeded to collect on a debt in wanton recklessness as to presuming trustworthiness of misrepresentations.

*57.*    CREDITOR's representations concerns a material fact.

*58.*    CREDITOR or its agents knew, should have known, or should be deem to have known the statement was false at the time CREDITOR (agent) made the statement.

*59.*    CREDITOR intended the Court and DEBTOR to act in reliance on the misrepresentation shows a reckless disregard for: the consequences to DEBTOR; the integrity of the Court; and/or truthfulness to the tribunal.

*60.*  At the certain times, DEBTOR reasonably relied on CREDITOR's misrepresentation due to DEBTOR not having privity to certain documents.

*61.*  CREDITOR negligently omitted to advise DEBTOR (and the Court) of the inherent untrustworthiness of the document.

*62.*  Plaintiffs were damaged by the undisclosed trustworthiness.

*63.*  The last element of damage occurred with the CERTIFICATE OF TITLE.

*64.*  The non-disclosure of untrustworthiness involves CREDITOR in a scheme that creates illicit document manufacturing which reasonable prudence would expect such documents to be routinely improperly relied upon for debt collection.

*65.*  Plaintiffs suffered damages as a proximate result of the reliance by the Court/Tribunal on the misrepresentations and omissions of CREDITOR.

*66.*  WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested *infra*.

## COUNT V – TORTIOUS INTERFERENCE OF ADVANTAGEOUS RELATIONSHIP BETWEEN PLAINTIFF AND INVESTOR

*67.*  Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*68.* Plaintiff and INVESTOR/OWNER ( ) has a DEBTOR/CREDITOR relationship.

*69.* DEBTOR/CREDITOR stands to gain with amounts of value emanating from interest, fee(s), and/or from the sale of underlying collateral. Plaintiff stands to benefit from value provided by creditor.

*70.* Each CREDITOR Servicer and/or Agent (CREDITOR agents) has a fiduciary duty of care to each pertinent Principal.

*71.* Each CREDITOR Servicer and/or Agent who committed an act of negligence (pursuant to Count I) interfered with the DEBTOR/CREDITOR relationship of the Plaintiff and pertinent Principal.

*72.* Plaintiff and each Investor is damaged due to the interference of pertinent Defendant Servicer and/or Agent.

*73.* Plaintiff is damaged by incurred expenses for mitigation processing, and will continue to incur additional expenses in the future.

*74.* WHEREFORE, PLAINTIFF demands judgment consistent with the remedies requested infra.

## REMEDIES DEMANDED FOR NEGLIGENCE AND TORTIOUS INTERFERENCE

*75.* Plaintiff reserves to demand exemplary or punitive damages are available where it can be shown that the CREDITOR acted with malice or criminal indifference.

*76.* REMEDIES DEMANDED by Plaintiff is judgment to each CREDITOR for:

a. Compensatory damages (damages for the detriment suffered as a result of the WELLS FARG O's negligent conduct - Tiara Condominium Assoc. v. Marsh & McClennan Co., Inc., No. SC10-1022 (Fla. 2013));

b. Lost earnings (any wages lost because of the CREDITOR's negligent conduct causing continuing blemished credit rating. The amount of lost earnings to be awarded to the plaintiff is based upon the plaintiff's possible future earnings, not past income);

c. Lost profits (based on Plaintiff credit rating continuing to be blemished, any reasonable expectation of earning profits based upon prior earnings);

d. Injury to personal property (damage and the loss of use of personal property/credit rating);

e. Nominal damages (no damages or where recoverable damages were not proven, Stevens v. Cricket Club Condominium, Inc., 784 So. 2d 517 (Fla. 3rd DCA 2001));

h. Loss of consortium: Recoverable by spouse of the plaintiff for loss of the

love and affection of a spouse.

i.     as well as post-judgment interest and the costs and expenses of bringing this action as allowed by law, and any other relief this Honorable Court deems just and proper.

## COUNT VI – VIOLATION OF RESPA

77.   Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

78.   Mortgage Servicing Rules found under the Real Estate Settlement Procedures Act (Regulation X), 12 U.S.C. §2605, et seq. and the Consumer Financial Protection Bureau can regulate pursuant to Dodd-Frank Act.

79.   Enacted as consumer protection statute, RESPA provides a mechanism for regulating the real estate settlement process, placing requirements on entities or persons responsible for servicing federally related mortgage loans. McClean v. GMAC Mortg. Corp., 398 F.App'x 467, 471 (11th Cir. 2010) (per curiam) (noting that RESPA is a consumer protection statute that is to be construed liberally to best serve Congress' intent).

80.   Under RESPA, to "service" a loan means to receive scheduled periodic payments from a borrower pursuant to the terms of the loan and to make payments of principal and interest and such other payments with with

respect to the amounts received from the borrower. See 12 U.S.C. 2605(i)(3). As a loan servicer, an entity has certain obligations to respond to a borrower's inquiries.  A specific inquiry that triggers a response is a "qualified written request" (hereinafter "QWR") concerning the servicing of the mortgage.

81.  A QWR is a written correspondence from the borrower to the servicer (other than a notice on a payment coupon or other medium supplied by the servicer) that: (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower," and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. 2605(e)(1)(B).

82.  Upon receiving a QWR, the servicer must provide within twenty days (excluding public holidays, Saturdays, and Sundays) a written response acknowledging receipt of the correspondence "unless the action requested is taken within such period." Id. 2605(e)(1)(A).

83.  Additionally, pursuant to *McClean*,  398 *F.App'x* at 471(citing 12 U.S.C. 2605(e)(2)). within sixty days after receipt of a QWR, a servicer must:

(1) make appropriate corrections in the account of the borrower and transmit a written notification of such correction;

(2) after conducting an investigation, provide the borrower with a written explanation that includes statements of the reasons for which the servicer believes the account is correct, and the name and telephone number of an employment or department that can provide further assistance; or

(3) after conducting an investigation, provide the borrower with a written explanation that includes the information requested by the borrower or an explanation of why the information requested is unavailable along with the name and telephone number of an employee or department that can provide further assistance.

84.    If a servicer fails to comply with the requirements of Section 2605, the servicer is liable to the borrower for any actual damages resulting from the failed compliance and for any additional damages, not exceeding $1000 (as amended to $2000), that the court may grant if there is a showing of a pattern or practice of non-compliance with the requirements of the action.   12 U.S.C. 2605 (f)(1); as amended by Dodd-Frank Act enacted July 21, 2010 (with sixty day effective date).

85.    To state a RESPA CLAIM for failure to respond to a QWR, plaintiff alleges:

(1) pertinent loan servicer under the subject statute is a servicer of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

(2) discovery to show the plaintiff sent writings consistent with the requirements of of a QWR;  The correspondence to Defendant includes information that Plaintiff that would enable Defendant to identify the name and account of the borrower and the information that Plaintiff sought from the correspondence. Specifically, Plaintiff included in correspondence the NAME of account holder and loan account number information.

86. Further Plaintiff alleges that correspondence amounts to a validation of debt amount and ownership of debt. Plaintiff alleges correspondence states to the extent applicable that the belief the account was in error because of the news of publicly reported improper transfers of debt. Plaintiff alleges an absence of notification of any debt transfers or notification of assignments.

87. Plaintiff's written requests for information and validation is within the meaning of RESPA because the correspondence allows servicer to identify the name and account of the borrower and included stated doubt of validity of debt and amounts.  Plaintiff alleges correspondence requested validation of debt and ownership of debt.  Plaintiff stated to the

extent applicable that the belief the account was in error because of the news of publicly reported improper transfers of debt.  Plaintiff alleges an absence of notification of any debt transfers or notification of assignments.

88.   The defendant failed to respond adequately within the statutory required days.  As Plaintiff alleges an absence of notification of any debt transfers or notification of assignments.  Servicer deliberately failed to respond in a proper and timely way to Plaintiff's ''qualified written requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

89.   Plaintiff alleges that due to an absence of notification of any debt transfers or notification of assignments, Plaintiff minimally has suffered statutory damages for failure of Defendant to respond with receipt to each correspondence.

90.   Moreover, Plaintiff alleges Defendant did NOT do proper investigation of  correspondence within subsequent period after acknowledgment of receipt of correspondence.  Further Plaintiff alleges Defendant did NOT timely or sufficiently communicate a person or department which could provide requested information as related to correspondence.

*91.*   Plaintiff alleges the Defendant has misapplied payments to interest, principal, fees, and applicable escrow items.   Specifically, the initial principal balance was likely calculated in violation of TILA regulations and hence the continuing payments are wrong. Defendant also charged unauthorized fees from the beginning of the loan and periodically throughout the loan including escrow amounts.

*92.*   To determine actual damages, discovery is request of copy of original loan records and accounting through out.   Plaintiff requests Judicial Notice and incorporated by reference of U.S. Treasury investigation and applicable related binding orders to related to this case which had been found through links of www.independentforeclosurereview.com.   In particular, if the Defendant had completed the independent foreclosure review, the review would have uncovered actual damages from misapplied funds.

*93.*   The last element of damage occurred with the CERTIFICATE OF TITLE.

*94.*   Additionally, Defendant servicers breached its aforementioned duties, which indicate that the guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry.  Aforementioned Counts of Negligence, Negligent Training, Negligent Supervision, and

Tortious Interference show a pattern or practice of non-compliance with applicable Section 2605 requirements.

**95.** Plaintiff alleges damages for costs of this lawsuit and for any applicable attorney fees if counsel is engaged.

**96.** WHEREFORE, Plaintiff demands judgment of $2000,00 against each pertinent servicer for:

a) statutory damages for each violation (non-response and/or improper response in breach of mitigation duties);

b) improper accounting and application of his mortgage payments for actual damages as discovery will provide;

c) lawsuit costs; and/or

d) attorney fees

e) along with any other and further relief as the court deems just and proper, pursuant to 12 U.S.C. §2605.

## COUNT VII – VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641

**97.** Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

**98.** A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general – In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(a) the identity, address, telephone number of the new creditor;

(b) the date of transfer;

(c) how to reach an agent or party having authority to act on behalf of the new creditor;

(d) the location of the place where transfer of ownership of the debt is recorded; and

(e) any other relevant information regarding the new creditor.

99.  Plaintiff alleges that since the date of the note, Defendant Creditor(s) did not give proper notice.

100.  Plaintiff alleges never receiving proper timely notice of any assignment. Plaintiff discovered assignments through the court records of the related state filings.  Such discovery of assignment is  untimely and insufficient.

101. Plaintiff alleges each pertinent Defendant that is or was the owner of the subject debt.

102. Pertinent Creditor failed to provide any timely or sufficient notice of new ownership.

103. Plaintiff requests Judicial Notice and incorporates by reference of U.S. Treasury investigation and applicable related binding orders to related to this case which may be found through links of www.independentforeclosurereview.com.   In particular, if the pertinent Defendant completed independent foreclosure review, improprieties would have been uncovered earlier.

104. Plaintiff alleges the instances of non-disclosure or late disclosure by pertinent Creditor(s) are/is a pattern or practice of non-compliance with relevant requirements.

105. As a result of Creditor(s) failure to notify disclosure of new creditor, Plaintiff has suffered statutory damages and cost of lawsuit.

106. The last element of damage occurred with the CERTIFICATE OF TITLE.

107. WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

## COUNT VIII – VIOLATION OF FCCPA

**108.** Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

**109.** Florida Statute Sections 559.55 - 559.785 may be cited as the "Florida Consumer Collection Practices Act", herein "FCCPA".

**110.** Florida Statute Section 559.72   states in pertinent part:

Prohibited practices generally.—In collecting consumer debts, no person shall:

(9)   Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

**111.** Fla.Stat. § 516.31   states in pertinent part:

Consumer protection; certain negotiable instruments restricted; assigns subject to defenses; limitation on deficiency claims; cross collateral.—

(1)   SCOPE.—This section applies to every consumer finance loan or other contract authorized by this chapter in which any form of credit is extended to an individual to purchase or obtain goods or services for use primarily for personal, family, or household purposes.

(2)   RESTRICTION ON CERTAIN NEGOTIABLE INSTRUMENTS AND INSTALLMENT CONTRACTS.—A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which

originated from the purchase of certain consumer goods or services is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when the claim or defense is asserted against the person.

*112.*   Fla.Stat. § 559.715   states:

Assignment of consumer debts.—This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt. However, the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt. The assignee is a real party in interest and may bring an action to collect a debt that has been assigned to the assignee and is in default.

*113.*   Fla.Stat. § 559.77(2) provides for statutory damages of $1,000.00 for each violation.

*114.*   Plaintiff incorporates the allegations in the counts of negligence, negligent training, negligent supervision, negligent misrepresentation, and tortious interference.

*115.*   Plaintiff also declares counts of violation of FDCPA, RESPA, & TILA as violations of FCCPA.

*116.* As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

*117.* WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

### COUNT IX – VIOLATION OF FDCPA

*118.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*119.* Plaintiff alleges the following violations of Federal Debt Collection Practices Act ("FDCPA") in pertinent part.15 USC § 1692e - False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 USC § 1692j - Furnishing certain deceptive forms

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 USC § 1692f - Unfair practices - A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*120.* The Federal Debt Collection Practices Act ("FDCPA")indicates that a loan servicer could be deemed a "debt collector" under the FDCPA where it attempted to both enforce a security interest and collect a debt – Birster v. American Home Mortgage Servicing, Inc., No. 11-13574 (11th Cir. July 18, 2012) (reversing and remanding).

*121.* Any false, deceptive, or misleading representation or means in connection with the collection of any debt, is a violation of the FDCPA. Even, a false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, even where no misleading or deception is claimed.  Bourff v. Rubin Lublin, LLC, 674 F.3d 1238 (11th Cir. 2012).

*122.* TILA indicates that creditor and assignee (as defined under 15 USC §§ 1602(g), 1641) may be held vicariously liable for original lender's failure to properly respond to borrower's request for information under 12 C.F.R. § 226.36 – Cenat v. U.S. Bank, N.A., No. 12-80663-CIV (S.D.Fla. March 19, 2013) (denying defendant's motion to dismiss).

*123.* Statutory damages of $1000.00 for each violation is provided by 15 U.S.C. § 1692k(a)(2).

*124.* Reasonable attorney fees and costs are provided by 15 U.S.C. § 1692k(a)(3).

*125.* Plaintiff alleges the instances of non-disclosure or late disclosure by pertinent Creditor(s) are/is a pattern or practice of non-compliance with relevant requirements.

*126.* Plaintiff incorporates the allegations in the counts of negligence, negligent training, negligent supervision, negligent misrepresentation, and tortious interference as violations of FDCPA.

*127.* The last element of damage occurred with the CERTIFICATE OF TITLE.

*128.* Plaintiff also declares counts of violation of RESPA & TILA as violations of FCCPA.

*129.* As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

*130.* WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

## COUNT X – VIOLATION OF FDUPTA

*131.* Plaintiff re-allege and incorporate by reference are above stated Background & Factual allegations.

*132.*   The Florida Deceptive and Unfair Trade Practices Act, herein after "FDUPTA", states:

501.202   Purposes; rules of construction.—The provisions of this part shall be construed liberally to promote the following policies: (1)   To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices; (2)   To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.(3)   To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

501.203 (3)   "Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2006:(a)   Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.;(b)   The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts;(c)   Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

501.204   Unlawful acts and practices.—(1)   Unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.(2)   It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

133. Plaintiff incorporates the allegations in the counts of negligence, negligent training, negligent supervision, negligent misrepresentation, and tortious interference.

134. Plaintiff also declares counts of violation of FCCPA, FDCPA, RESPA, & TILA as violations of FDUPTA.

135. As a result of each Defendant violation(s), Plaintiff has suffered statutory damages and cost of lawsuit.

136. WHEREFORE, Plaintiff demands judgment for statutory damages, lawsuit costs, and future attorney fees that may be incurred, along with any other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

137. Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted this 15th day of January, 2018.


  /s/ Allan Campbell  

AIM Law PA -For the Firm:

Allan Campbell Esq.- FBN 0854522-Aty Chris Lim - cell 407-925-4858 (text capable-no voicemail) - Buss-407-279-1246 (voicemail capable)

AIM- PO Box 568163 - Orlando FL 32856

Primary Email: attyacampbell@aol.com - Secondary Emails: ask.our.assistant1@gmail.com & ask.our.assistant2@gmail.com

Counsel for Edwin P. Christensen Jr. a/k/a Edwin Christensen Jr. a/k/a Edwin Christensen; et al